**SO ORDERED.**

**SIGNED this 30 day of November, 2007.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>JULIE NANETTE WEAVER,<br><br>                DEBTOR. | CASE NO. 05-25778-7<br>CHAPTER 7 |

# OPINION FINDING DEBTOR IN CONTEMPT, DECLARING TRUSTEE IS ENTITLED TO RECOVER ATTORNEY FEES, AND DENYING DEBTOR'S RECENT EFFORT TO EXEMPT A HOMESTEAD

This matter is before the Court following a hearing on September 14, 2007. Chapter 7 Trustee Christopher Redmond appeared as his own attorney and by counsel Scottie Kleypas; both attorneys are with the Husch & Eppenberger, LLC, firm. Debtor Julie Nanette Weaver appeared personally and by counsel Jeannie M. Bobrink. The Court heard the Debtor testify on July 25, 2007, and again at this hearing, and is now

ready to issue this opinion.

This case involves a Debtor who voluntarily filed a Chapter 7 bankruptcy petition on October 12, 2005, but has since ignored many of the obligations imposed on her because she chose to seek bankruptcy relief. She has failed to provide information and documentation sought by the Trustee, has failed to turn property of the estate over to the Trustee, has admittedly given false information while testifying under oath before this Court, and has failed to adequately explain what happened to a check for more than $48,000 that she concedes she received the day before she filed for bankruptcy. Under the circumstances, the Court finds the Debtor in contempt, and concludes: (1) she must be ordered to pay attorney fees the Trustee has incurred trying to force her to fulfill her duties as a Chapter 7 debtor; and (2) her recent effort to claim a homestead exemption must be denied.

**FACTS**

*a.    Background information*

Shortly before she filed for bankruptcy on October 12, 2005, the Debtor owned three pieces of real property: (1) a property in Osawatomie, Kansas, where she had lived since 1990 (owned in co-tenancy); (2) a house in Gardner, Kansas, that had belonged to her aunt; and (3) another house in Osawatomie that had belonged to her grandmother. On her bankruptcy petition, the Debtor gave her address as being on Carr Avenue, but she did not otherwise mention that real property in the papers filed with the petition. On the day before she filed for bankruptcy, the Debtor received a check for $48,819.92 at a closing

for the sale of her aunt's house.  That sale was reported on the Debtor's Statement of Financial Affairs as having occurred on September 20, rather than October 11.  The transferee was reported as "BFP."  No address was given for BFP and BFP's relationship to the Debtor was not described.  The amount the Debtor received at the closing was not stated, although she reported she had used the money as a down payment on a double-wide mobile home.  As will be described in more detail later, the Debtor has failed to provide documentation about the transaction and her use of the proceeds of the sale that should be readily available to her, and has testified falsely about her use of the proceeds.  Her actions have prevented the Trustee from being able to determine whether the bankruptcy estate has any rights arising from the sale of the aunt's house.

On the Schedule A, Real Property the Debtor filed with her bankruptcy petition, she reported owning only a house that had belonged to her grandmother, which she said was uninhabitable and worth $500.  On her Schedule D, Creditors Holding Secured Claims, she reported that her only secured creditor had a mortgage on this house for $0, and that she would be surrendering the house.  On her Statement of Intention, though, she did not indicate she would be surrendering any property that secured a debt.  On her Schedule B, Personal Property, the Debtor reported owning a "1975 mobile home — not double wide — foundation is being poured."  Neither the Carr Avenue property nor any double-wide mobile home was listed as an asset on any of the Schedules.

On the Schedule B, Personal Property, the Debtor also reported being a member of a class-action lawsuit, but said she had been told she would not receive anything because

3

her claim was made too late.  In August 2006, however, she received $3,750 to settle her claim in the case; because the claim arose before she filed for bankruptcy, that money belonged to her bankruptcy estate.  At some unspecified time in 2006, the Debtor also received federal and state income tax refunds for 2005; based on the date of her bankruptcy filing, $2,602.05 of these refunds belonged to the estate.  The Debtor failed to give the Trustee either the settlement money or the estate's share of the tax refunds.  Eventually, in February 2007, the Trustee filed a motion to compel turnover of the money that belonged to the estate, and later reached an agreement for the Debtor to pay the sum of those amounts, $6,352.05, to the estate out of future tax refunds.

In addition to seeking turnover of the estate's money, the Trustee's motion to compel asked the Court to order the Debtor to provide information and documentation about a variety of things, including the sale of the aunt's house and the mortgage on the grandmother's house.  On July 25, 2007, the Debtor testified at a hearing at which the Court granted the motion to compel.  A short time later, the Debtor admitted that much of her testimony at that hearing had been false; this situation will be discussed in more detail below.  The Debtor has still not provided much of the requested documentation.

On the Debtor's original Schedule B, Personal Property, she also denied owning any stock or interests in any incorporated or unincorporated businesses, partnerships, or joint ventures.  On her Statement of Financial Affairs, she reported that she had owned an auto parts business with her father from 1989 to 2003, but that they had shut it down in 2001 and it had been sold at a tax sale.  Nevertheless, she reported on her 2006 federal

4

income tax return that her business property had been sold, exchanged, or involuntarily converted in March 2006 for $22,364, causing her to suffer a loss of $105,559. She testified that the property involved in the sale, exchange, or conversion was the business she owned with her father. The Debtor claimed that the property had been sold at a tax sale that actually occurred several years earlier. She has worked for H&R Block preparing tax returns, and claims that the deduction for the loss on the sale could be taken in 2006 because until March 2006, her father had rented the real property the business had owned from the tax-sale buyer, and she and her father had stored records and other items there. She also testified that (1) the business had been owned by the family; (2) she did not know what ownership interest she had when she filed for bankruptcy, but did not think she had any interest then; and (3) her parents did not need the deduction in 2006 for the loss from the sale of the business, so they let her take it.

In her original Schedules, the Debtor did not claim any exemptions. On August 3, 2007, she amended her Statement of Financial Affairs and Schedules A, B, C, and D. On her new Schedule C, she claimed her Carr Avenue property and a double-wide mobile home installed on it to be exempt as her homestead. The Trustee objected to the newly-claimed exemptions, alleging the Debtor's failure to disclose assets and information, and her continuing false statements to the Court and the Trustee should invalidate the exemptions. The Trustee pointed out that while the Debtor's amended schedules reported her ownership of the Carr Avenue property, they failed to disclose there is a co-owner of the property.

5

At the July 25, 2007, hearing, the Court found the Debtor had knowingly failed to turn over the tax refunds and the class-action settlement money, ordered her to execute an agreement to pay the $6,352.05 to the estate, and ordered her to sign her federal tax return for 2006, which she had not yet filed. The Court found the Debtor had failed to report assets in her bankruptcy schedules, including her Carr Avenue real property, and failed to claim any exemptions. The Court further found the Debtor had failed to comply with a local court rule by failing for almost two years to turn over documentation the Trustee had asked her for. The Debtor's Carr Avenue property was flooded about a month before the hearing in July 2007, and she tried to suggest the flood had kept her from providing documents to the Trustee because it destroyed many of her records. She offered no explanation, however, for her failure to supply information and documents to the Trustee during the eighteen or more months that passed between the time she filed for bankruptcy and her property was flooded, or for her failure to obtain copies of the documents from other sources. The Court again ordered the Debtor to provide the Trustee with the documentation he had requested. The oral rulings were reduced to writing in an order entered on August 21, 2007.

On the same day he filed his objection to the Debtor's amended exemptions, the Trustee filed a motion for an order requiring the Debtor to show cause why she should not be held in contempt for: (1) failing to provide proof of filing her 2006 Kansas income tax return; (2) giving false testimony about her use of the proceeds of the sale of her aunt's house; (3) failing to disclose there is a co-owner of the Carr Avenue property;

(4) claiming her grandmother's house had been foreclosed on when county records show the Debtor owns it free and clear; and (5) continuing to fail to provide information and documentation the Trustee had previously requested. The Trustee asked that the Debtor be ordered to pay attorney fees and costs he has incurred because of her lack of cooperation, her false testimony and false evidence, and her failure to turn over estate property.

b. *Debtor's testimony at July 25, 2007, and September 14, 2007, hearings, and related matters*

On July 25, 2007, the Debtor testified at a hearing before this Court. At that time, she testified that a real estate company handled the sale of her aunt's house, but that she did not know who bought the house from her. She said she received in cash more than $48,000 in proceeds from the sale. She claimed work, including pouring a foundation, had been done in September and October 2005 to prepare her Carr Avenue property to have a used double-wide mobile home installed there. She said her sister, knowing that the Debtor needed the money and had a contract signed for the sale of their aunt's house, had loaned her the money in September to pay for the work and to buy the double-wide. The Debtor testified that she repaid the money from the proceeds of that sale. This repayment, she said, was made in cash on October 11, the day the sale closed and the day before she filed for bankruptcy.

Shortly after the July hearing, the Trustee contacted the Debtor's sister, who denied that she received $48,819.92 from the Debtor on October 11, 2005, or any other

7

date.  The Trustee alleges, and the Debtor has not denied, that the Debtor's attorney contacted his office shortly after that to say the Debtor needed to change her testimony because she "forgot" she: (1) did not pay cash for her mobile home, (2) did not borrow the money from her sister to pay cash for it, and (3) did not repay her sister on the day before filing for bankruptcy.

When the Debtor testified again on September 14, 2007, she admitted her sister had not loaned her any money, and she had not paid her sister in cash on October 11, 2005, because she had not borrowed any money from her.  The Debtor claimed she had been confused and mistaken at the previous hearing, but the Court watched her testify in July and saw no sign of confusion.  Instead, as the Court said near the end of the July hearing, the Court saw a women who was bright and articulate, could recall information when questions were asked (though many of her answers were later revealed to have been false), and had absolute command of the facts concerning her situation and activities.  The Debtor had remained poised and confident of her answers throughout the hearing, even in the face of the surprise both the Court and the Trustee's attorney showed when she insisted she had received more than $48,000 in cash currency and paid it to her sister on October 11, 2005.

At the September 2007 hearing, the Debtor dramatically changed her story about the $48,819.92 she received at the October 11, 2005, closing.  She still claimed she spent the money for a double-wide mobile home and for foundation, dirt, and other work at her Carr Avenue property, but testified she could not remember whether she spent the money

8

before October 12, 2005, and could not remember whether the work to install the mobile home was all done before that date. She said she could not remember whether she was living in the double-wide on the day she filed for bankruptcy. She also produced for the first time a copy of a bill of sale for a mobile home she had bought for $35,000. Although the date on the copy of the bill of sale is difficult to read, the Court said at the hearing the date appeared to be "11-18-05." The Debtor insisted that was wrong, and that she had bought the home in October, not November. However, she continued to be vague about exactly when she made the deal to buy the mobile home, when the work was done to prepare her land for the home, and when the home was delivered there. In a "Remarks" box on the bill of sale, the $35,000 price is reported to have been paid in full by check number 116794 for $15,000, check number 116795 for $15,000, and $5,000 in cash. The Debtor testified she knew the checks were not from her own account because her check numbers were not that high, but said she did not know where the checks came from.

      The Debtor still claimed she "cashed" the $48,819.92 check, but said she did not remember where she did that. The Debtor admitted a copy of the check showed she had signed it on the back, but insisted a date of October 13, 2005, printed on the bottom of the check was the date the check cleared the title company's bank, not the date she cashed it. She admitted she had brought with her no evidence to show what day she cashed the check. The Court concludes that the Debtor remembers exactly what she did with the $48,819.92 check and its proceeds, but refuses to reveal the truth because she is afraid she or others would suffer negative consequences if the truth became known.

9

At the September 2007 hearing, the Debtor admitted that on April 26, 2006, she had signed an application to obtain a permit from the city of Osawatomie to install a manufactured home on a foundation at the Carr Avenue property. The application indicated the Debtor and a co-owner of the property "will live in mobile home located on the west side of property until new house is installed, them [sic] remove mobile home within 3 months." The Debtor suggested that because Osawatomie is a small town, she was allowed to apply for the permit months after the work it described had actually been done. The Court rejects the Debtor's explanation for the timing of her permit application, concluding it is instead further evidence that she did not spend the $48,819.92 until after she filed her bankruptcy case and the money had become property of the bankruptcy estate.

As mentioned earlier, the Debtor had indicated on her bankruptcy schedules that a creditor had a mortgage on the house she owned that had belonged to her grandmother. A credit report for the Debtor dated September 11, 2005, indicated the creditor had informed the credit bureau that foreclosure proceedings had been started, but the report also showed the balance owed to the creditor as of August 2005 was $0. The creditor was listed among the Debtor's creditors from the beginning of this case, but has never sought stay relief to enforce a mortgage on this property, and has not filed a proof of claim, even though a claims-filing deadline was established in the Debtor's bankruptcy case and has expired.

The Debtor claimed she abandoned or surrendered her grandmother's former

10

house when she filed for bankruptcy, and assumed the creditor had foreclosed on it. The Debtor also claimed officials had told her the city of Osawatomie was going to condemn the house. The Trustee obtained an ownership report for the house that showed the property was still in the Debtor's name as of August 7, 2007. The Debtor's father testified at the September 2007 hearing that he had recently put a new roof on the house and done some other work on it, hoping to salvage it and perhaps use it as a rental property, but that the city was going to demolish it anyway. He said the Debtor was through with the house, but did not explain how he would have any right to use it. His approach seems to mirror the Debtor's view that where their family is concerned, they are free to shuffle property ownership around to suit their convenience, without regard to any legal restrictions that might exist. The Court believes the Debtor's assertions about the mortgage and the threatened condemnation of the house were efforts to convince the Trustee the estate's interest in the house is worthless and not worth liquidating.

**DISCUSSION**

*1.     Contempt*

The Trustee asks the Court to find the Debtor in contempt. The Debtor is clearly in contempt because she failed to comply with the Court's order to provide information and documentation to the Trustee and she testified falsely at the July 2007 hearing. She further demonstrated her contemptuous attitude by testifying during the September hearing that she could not remember where she took the $48,000 closing check to "cash" it, and could not remember whether the work at her Carr Avenue property to prepare it for

11

the double-wide mobile home was completed before she filed for bankruptcy or whether the double-wide was installed there by that time. In fact, the only document she has ever produced to show what she did with that money appears to the Court to show that she bought the double-wide — spending $35,000 of the money — a month after she filed for bankruptcy.

2.	*Attorney Fees*

The Trustee asks for an award of attorney fees he has incurred trying to get the Debtor to comply with the oral orders the Court made at the July 2007 hearing, as embodied in the written order entered on August 21. The Tenth Circuit has ruled that bankruptcy courts have authority to enforce their orders through the civil contempt power, and explained that civil contempt orders either try to coerce obedience to a court order, or to compensate other parties for losses caused by the contemptuous party's failure to comply with a court order, or both.[1] A fine imposed to punish contemptuous behavior is a criminal contempt penalty, but compensatory damages are a civil contempt remedy.[2] In this case, the Debtor's contemptuous behavior has forced the Trustee to incur attorney fees in an effort to force her to comply with the Court's July 2007 orders. Consequently, the Trustee is entitled to recover those fees from the Debtor as compensation for her contempt.

---

[1] *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 n. 2 (10th Cir. 1990).

[2] *In re Armstrong*, 304 B.R. 432, 437-38 (10th Cir. BAP 2004).

12

The Trustee also asks for an award of attorney fees he has incurred in this case as a result of the Debtor's having acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," quoting the Tenth Circuit's decision in *United States v. McCall*.[3] The Circuit explained that while the usual "American Rule" prevents a prevailing party in a lawsuit from recovering attorney fees from its opponent, a narrow bad-faith exception permits such recovery when the opponent has acted extremely improperly.[4] The Debtor has acted extremely improperly in this case from the beginning, failing to disclose assets and other required information in her original bankruptcy papers, failing to comply with the Trustee's requests for additional information and documentation, and refusing even now to reveal the truth about her use of the proceeds of the sale of her aunt's house. Under the *McCall* exception to the usual prohibition against the recovery of attorney fees, the Trustee is entitled to recover fees to the extent he was forced to incur more of them than he would have if the Debtor had disclosed all her assets, turned over property of the estate, and provided documents and additional information from the beginning of this case. Such fees are recoverable even for the period before the Court made its oral orders at the July 2007 hearing. The Trustee may not recover fees he would have incurred even if the Debtor had fulfilled her duties from the beginning.

The Trustee also argues that he is entitled to recover attorney fees under § 362(h),

---

[3] 235 F.3d 1211, 1216 (10th Cir. 2000) (quoting *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984)).

[4] *Id.*

13

which authorizes an "individual" to recover fees for violations of the automatic stay. The Trustee notes that courts disagree whether a Chapter 7 trustee qualifies as an "individual" who can recover under § 362(h).[5] In addition to that issue, the Court questions whether a Chapter 7 debtor is bound by the general provisions of the automatic stay, or is instead bound only to fulfill the duties imposed by § 521 and other provisions that specifically apply to debtors. Since the Trustee's fees are properly recoverable under *McCall*'s bad faith exception and, after July 2007, based on the Debtor's contempt, the Court declines to decide in this case whether the fees would also be recoverable under § 362(h).

*3. Objection to Exemptions*

The Trustee contends the Debtor's new exemption claims should all be disallowed because she failed to disclose assets and continues to make false statements to the Court and the Trustee. However, while the Debtor did not list her Carr Avenue property or the double-wide mobile home that has been installed there on her original Schedule B, Personal Property, and claimed no exemptions on Schedule C, she did list all the other items she now claims as exempt on her original Schedule B. Specifically, she listed wearing apparel valued at $50, costume jewelry valued at $5, an accidental death insurance policy through a checking account valued at $0, an interest in KPERS valued at $0, and a 1985 car with over 98,000 miles on it valued at $50. The Federal Rules of

---

[5]*Compare Morris v. St. Joseph Medical Center In re Fisher)*, 194 B.R. 525, 533 (Bankr. D. Kan. 1996) (case trustee can recover under § 362(h)) *with In re Pace*, 67 F.3d 187, 192 (9th Cir. 1995) (case trustee not "individual" under § 362(h)).

14

Bankruptcy Procedure allow debtors to amend their schedules,[6] and the reasons the Trustee relies on for denying the Debtor's exemption claims do not apply to these items. The Debtor disclosed them, and the false testimony and other false information she gave did not concern any of them. The Trustee's objection to the exemption claims for these items is overruled.

The reasons for the Trustee's objection do apply, though, to the Debtor's homestead claim for the Carr Avenue property and the double-wide mobile home installed there. As one circuit court has said in discussing the need for debtors to disclose their financial circumstances:

> On the other hand, the very purpose of certain sections of the law . . . is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *[In re] Mascolo*, 505 F.2d [274,] 278 [(1st Cir. 1974)]. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. [Citations omitted.][7]

Through her actions, the Debtor has forced the Trustee to engage in "a laborious tug-of-war" to discover assets and information she was required to disclose.

The Debtor's Carr Avenue property was disclosed only to the extent it was given on the petition as her street address, and the double-wide mobile home appeared only to

---

[6] *See* Fed. R. Bankr. P. 1009(a). Although Interim Fed. R. Bankr. P. 1009 does not apply in this pre-BAPCPA case, subsection (a) of the interim rule is the same as it was in the prior rule.

[7] *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

15

the extent the Debtor reported on the Statement of Financial Affairs that she had used money she received from selling her aunt's house as a down payment on a double-wide mobile home. By failing to list these items on her Schedules of Real and Personal Property, and by failing to truthfully report how and when she spent the proceeds of the sale of her aunt's house, the Debtor made the Trustee spend time to uncover facts about her financial circumstances that she obviously knew all along. Such actions constitute bad faith that justifies denying the Debtor's homestead exemption claim.

Ordinarily, in light of the generous protection homesteads in Kansas are given, debtors here have no reason to try to hide anything about their homesteads. However, the Tenth Circuit has approved denying a debtor's otherwise valid exemption claim based on the debtor's bad-faith failure to disclose the asset at the beginning of the bankruptcy case.[8] Here, the Debtor used the proceeds of her aunt's house to improve her Carr Avenue property and has been trying to hide the details of that use, probably because some or all of it occurred after the proceeds became property of her bankruptcy estate. This bad-faith effort to obscure her activities leads the Court to sustain the Trustee's objection to her attempted exemption of the Carr Avenue property and the double-wide mobile home. Even if denying the exemption were not proper, the Court would allow the Trustee to surcharge the property for the $48,819.92 that the Debtor received the day

---

[8]*Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1155-57 (10th Cir. 2007).

before she filed for bankruptcy and that she has failed to show was spent that same day.[9]

**CONCLUSION**

For these reasons, the Court concludes: (1) the Debtor is in contempt of the Court's orders announced at the July 25, 2007, hearing, and reduced to writing in an order entered on August 21, and the Trustee is entitled to recover attorney fees he incurred trying to force the Debtor to comply with those orders; (2) the Debtor has acted in bad faith throughout this case, and the Trustee is entitled to recover attorney fees he would not have incurred if the Debtor had freely and fully disclosed all her financial circumstances from the beginning of the case; and (3) the Trustee's objection to the Debtor's attempt to exempt the Carr Avenue property and the double-wide mobile home installed there is sustained, and the exemption is denied.

# # #

---

[9]*See In re Scrivner*, 370 B.R. 346, 351-54 (10th Cir. BAP 2007) (bankruptcy court has power to surcharge debtor's exempt assets to compensate bankruptcy estate for property of estate that debtor refuses to surrender).